The Honorable Judges of the United States Court of Appeals for the Third and Fourth Circuit. Oyez, oyez, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention where this court is now in session. God save the United States and this honorable court. Please be seated. Good morning. We'll go ahead and call our case for this morning. Robinson v. Secretary of Pennsylvania, Department of Corrections. Counsel. Thank you, Your Honor. May it please the court. My name is Eric Modolinsky, and I represent the appellant, Harvey Miguel Robinson. I would like to reserve two minutes for rebuttal. Done. The jury that sentenced Harvey Miguel Robinson to death asked whether parole was a possibility, and the judge's answer left them believing that in the future, it could be. This was error, and the Pennsylvania Supreme Court's determination that the trial court was under no obligation to instruct the jury on Mr. Robinson's parole ineligibility was contrary to the requirements of Simmons, Schaffer, and Kelly. Okay. We spent a lot of time with the briefs and the cases. I think we're pretty familiar with your arguments. Let me then dive in on this. What made the curative instruction less than adequate, Mr. Modolinsky? The court hears from both the Commonwealth lawyer and from Mr. Robinson's lawyer, in effect, and politely, hey, judge, you blew it. You can't say that. They tell him, you have to let these people know that life is life, and he tells them, life is life. There will be no parole. That's the language. There will be no parole. Given that he says that, and he says it within moments of the erroneous statement, why isn't that enough to cure whatever problem there was and for us to say, there's no Simmons error at all here? So in conducting the analysis, you have to look at the cases in light of the charge as a whole. Now, when the judge gave that curative instruction, he didn't retract. You have scare quotes around that. I mean, clearly he was attempting to cure it, right? He was attempting to cure it, but what he didn't do was retract the first statement. This is the precise instruction that defense counsel requested, and right as they object, he says, what is it he says? Sidebar. I must have misspoken somewhere. We could understand that as a retraction, but whether we do or not, all three lawyers ask for life is life. He gives what they ask for. Why isn't that invited error or at least satisfying their request? So it doesn't satisfy the request because he doesn't retract the first statement in front of the jury. Also, although life is life might be adequate under Simmons, Schaefer makes clear that life imprisonment means until the death of the defendant is not adequate to convey parole eligibility. That might be arguable, but counsel below objects to the first instruction and requests this. Then the judge gives this. If counsel thought there was an error in the curative instruction, counsel had an obligation to object at that point. There is no objection after the second instruction. So why isn't that at a minimum subject to cause and prejudice analysis? Well, first of all, is it? I don't think so. Counsel may have believed reasonably under Simmons that life is life was enough. Schaefer and Kelly made clear that that's not enough. OK, so counsel may have goofed, which would be in cause and prejudice territory. If counsel was ineffective, then we have to apply strict. OK, if the council misunderstood this. But is there any reason counsel had an obligation to object again if counsel thought the second instruction was not enough? Kelly makes it clear that the court has an obligation to ensure that the jury understands what the law is. So that's true, but that doesn't seem responsive. So please, before you go into your answer, I would like to hear your answer to Judge Beavis's question, which I understand to be there was if this was an inadequate cure, there was an obligation to object, right? Because at one moment you're saying it was inadequate, it wasn't enough to cure, but you seem to want to be avoiding acknowledging, well, if that was inadequate, there was an obligation to object. Can you have it both ways? Either it was inadequate and counsel had to object, or it was adequate, so there was no need to object. Can you have a third option there? I think the timing of Simmons and Schaefer and Kelly have to inform the analysis. I think the council may have believed reasonably under Simmons that that instruction was enough. But Schaefer and Kelly make it clear that life is life is not an adequate instruction to convey parole. Make it clear is a good phrase, because we have to look at what was clearly established federal law as determined by the Supreme Court, because we're under epideference here, right? So point me to where in Kelly, I have the case open in front of me, what in Kelly makes clear that life is life is not enough? So on page 257, the court says that in Schaefer we explicitly noted defense counsel's statement to the jury that Schaefer would die in prison after spending his natural life there, as well as the trial judge's instructions that life in prison means until the death of the defendant. We found these statements inadequate to convey a clear understanding of parole. Okay, but we do it. This instruction is a little bit different, because when I look at this, he added at Appendix 211A, there won't be any parole. Why is that not enough to distinguish or at least mean that Kelly doesn't clearly foreclose this instruction? So it's not enough because you have to consider the charge as a whole, and the charge as a whole includes the idea that the law could change in two years, and there might be parole. By that reasoning, you could never have a curative instruction, because what you're saying is that the judge made a mistake, and that's, you know, I'm inclined to think you're right about that. And frankly, I think the Commonwealth is inclined to think you're right about that, because they don't mention it in their brief, so you could probably say they've admitted that was a problem. But assuming that that's true, it appears from the transcript that it's just moments later that counsel for the Commonwealth jumps up and the defense counsel join them and tell them, the trial judge, you can't say this. That's a problem. And he immediately says, I'm to tell you that life is life. There will be no parole. There won't be any parole. How is that not clear enough, even under Kelly, to tell people parole and eligibility? What language would be better than there won't be any parole to convey parole and eligibility? Well, the judge would have to say, the instruction I gave you just a moment ago, you need to ignore that. And where do you get that? That's the question. Where do you get that as the standard? So the whole idea of Simmons is that the jury understand that parole is not available and shouldn't be a concern to them. But if a court can tell the jury that the law may change, then of course the jury is going to worry about parole. Right. And that's why lawyers for both sides stood up. It wasn't just the defense lawyer, the jury, both lawyers, the prosecution stands up. The court says, I must have misspoken somewhere. And then there's a sidebar. And the court comes back, I'm to tell you, and it's accurate. Life is life. There won't be any parole. So how is it that Kelly makes clear, clearly established that that is not enough? What what in Kelly does, because you just pointed me to some language where the jury had no way of knowing that parole was off the table. Well, in Simmons, in Justice O'Connor's controlling opinion, she says that the state may also inform the jury of any truthful information about the availability of commutation, pardon and the like. And that and the like. Well, you're shaking your head. But the state had read this and the like as suggesting truthful in Clark. Truthful information is good. And the opinion below relied on Clark. So why is it clearly established federal law that and the like does not include the possibility of legal change? Well, Simmons is establishing with the and the like that. It needs to be available right now. The word available is used. OK. And a change in the law in the future is not available in the present in the way that pardon and commutation are presently available. Law that doesn't exist is not like law that does. OK. So that establishes perhaps that the first instruction is flawed and then we have an objection to it. What is it that clearly establishes that the second instruction is flawed? If if we had not had the first instruction. Imagine a hypo or it's just the second instruction. I'm to tell you and it's accurate. Life is life. There won't be any parole. Life is life. Would that not satisfy sentence? I think if you just had that in a counterfactual world, that might work. However, you have to consider the charge as a whole. And the first part was never retracted. So in the jury's mind, the judge is telling them, these lawyers tell me that I have to tell you that life is life and there won't be any parole. But really, the law could change two years from now and there could be parole. That fans the flames of the jury's fear because they were terrified of this defendant who they've convicted of three terrible crimes. And the prosecutor has put has powerfully evoked his future dangerousness with language like. When he gets out, watch out, watch out. And all you have is depravity and rape and murder and death. Of course, the jury is terrified of them. And the first question on their mind, as soon as the jury charge was over, not long after this inflammatory closing argument and before they go back to deliberate, the first thing the jury for a person wants to know is whether parole is possible, because he is frightened that Mr. Robinson is going to get out. And rightfully so. You've noted the closing argument from the prosecution. And again, the Commonwealth doesn't argue that future dangerousness wasn't put in issue. That appears nowhere in their brief. So maybe they've acknowledged that, too. I'll be interested to hear about that from Commonwealth counsel. Assuming it was put in issue, do we just pay attention to the prosecution argument or do we pay attention to defense counsel's closing argument, too? So, I mean, defense counsel's closing argument does mention, it uses similar language to, I mean, it's inadequate language. He says things like he won't get out of prison. Without editorializing, the answer, I'm taking it since you're going into it, that you're acknowledging defense counsel's argument is pertinent to this decision, right? It is, but not his statements of the law, because the jury is told that the law comes from the judge. So their question about... Why would Simmons say that defense counsel's argument is pertinent if counsel's statements about the law weren't relevant? Because it is the, I mean, nobody in their right mind is going to say, Mr. Robinson doesn't pose a risk of future dangerousness. Good heavens, you wouldn't say, nobody would say that. The man was a serial rapist and murderer. So that, a factual argument wasn't really accessible to defense counsel. The only argument accessible to defense counsel at that point was a legal argument, right? I'm not sure I understand the question. Well, let me try it again. You just said a moment ago, legal argument, they're told ignore what the attorneys say. That strikes me as a tough argument for you to make, because Simmons says instruction or statements of counsel, words to that effect, right? That's true. The clear implication of that statement in Simmons is that what the lawyers say matters when you're looking at the whole to see whether there's seminary or whether it's harmless or et cetera, et cetera. You do look at what counsel say. And in this instance, since future dangerousness is on the table, and it is by definition always on the table in a Simmons case, factual arguments really aren't relevant because you can't say, don't worry about him, he's not a danger. Or if that's what you were saying, you wouldn't be in Simmons' land at all. You're in Simmons' land only because future dangerousness is the issue. So the legal argument is what's available to defense counsel, right, to say, you don't have to worry, this guy's never getting out. That's a legal statement. Right. I mean, he is entitled to do that. Skipper versus South Carolina and Buck versus Davis recognize how important it is for the defense counsel to be able to show that in the future his client won't be dangerous. A legal argument, and this defense counsel made that argument, right? He did, but Schaefer and Kelly made clear, although Simmons said that it could also come from counsel's argument, Schaefer and Kelly made clear that the jurors are entitled to an instruction. I see I'm out of time. I can go more into that. Now we're on rebuttal. Right. So am I understanding you correctly that you'd accept, probably because Simmons says so, that it's instruction and or argument, and we should be paying attention to both those things? No. Simmons says that, but Schaefer and Kelly changed that, and Schaefer and Kelly were decided before this conviction became final and direct appeal. Schaefer and Kelly say don't pay any attention to what the lawyer says. So Kelly, at 257, note 8, says, if Kelly's counsel had read the law verbatim to the jury with the judge's manifest approval, that might have sufficed. At page 256, it says the child did. Wait, doesn't that right there say that might have sufficed? If the judge says doesn't that mean you should be paying attention to what the defense counsel says, because that could suffice. Well, he didn't read the law verbatim, and there was no evidence that he had the judge's manifest approval, maybe his tacit approval, but the judge wasn't saying even though I said I'm going to tell you the law right now, defense counsel is going to tell you the law. Also, Kelly at 256 says a trial judge's duty is to give instructions to explain the law, sufficient to explain the law. We might be talking across purposes. I'm not asking you to acknowledge or say, oh, yeah, defense counsel here said enough and it's good enough. My only question to you is I want to make sure we're on the same page about what I'm trying to ask you. I'm sorry. No, no. I'm evidently being less than clear, so my apologies. It appears to me from Simmons, and I see nothing in Kelly and Schaefer that undercut it, that when we are looking at whether there was Simmons error, we look at both the instructions and at the argument of counsel. Both those things are on the table. Now, a moment ago you seemed to say, well, no, Kelly and Schaefer undercut that, but you've got to show me the language because I don't see anything in Kelly and Schaefer that say the argument of counsel is not relevant. It appears to be relevant. Show me where you think in the precedents Kelly and Schaefer say, yeah, we said that in Simmons, but forget about it. Kelly's language, I think, that I just read makes it clear that Simmons, that defense counsel's argument can be relevant if it's reading the law verbatim and it has the manifest approval of the judge, and that was not present here. Okay. A couple questions about Kelly and Schaefer. In Kelly, did the defense lawyer request a Simmons instruction? I think in all three of those South Carolina cases the defense counsel did request an instruction. And what does that request look like? You don't need to give it to me verbatim, but verbatim is great. If not, how would you paraphrase it? What would a good defense lawyer say when asking for a Simmons instruction? It would be something to the effect of a life sentence means life without possibility of parole. Okay. And here, as I understand the record, Robinson's counsel never asked for a Simmons instruction, correct? He only asked for life is life. Right. So then not having asked for a Simmons instruction, the Pennsylvania Supreme Court finding that, quote, accurate, correct? Well, it's contrary to Schaefer. In Schaefer at page 51, the court says, whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole. There's no requirement that the counsel ask for it. All right. Well, that was my next, you anticipated my next question. Can you cite a case where defense counsel did not ask for a Simmons instruction and a federal appellate court granted Simmons relief? I don't think I can right now. This is the first time for everything, right? The clear language of Schaefer says that a request is not necessary for due process. Well, I didn't hear. I heard what you read me from Schaefer, but I didn't interpret it the way you just said it. So let's parse that language again. I think Judge Hardiman may be getting at the distinction between what the holding of the case is on its facts versus what its reasoning or dicta, depending on how we interpret it, are. And I don't think we see a case where the holding is regardless of request. It has to be given. Now, it's true you may be pointing to reasoning that gestures in that direction, but we're pretty careful about the holding reasoning distinction when we look at what's clearly established law. I would read what I just read as the holding. Just read it again, please. Yes. Whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole. That's on page 51 of Schaefer. And your argument is that the jury must be informed sua sponte. It's not a defense obligation. Yes. It doesn't say that. Schaefer says what it says. And you're saying things here at the podium which are a little surprising to me. Here's what the opening, I thought your position was. Defense counsel did ask for a Simmons instruction. This is what the opening brief says. The state court was unreasonable in determining that counsel did not ask for a life without parole instruction. Yeah, that's a quote. That looks to me, and it goes on to say, by asking for life means life instruction, counsel did in fact request a Simmons instruction. That's a quote. Are you abandoning that position and saying, yeah, he never asked for a Simmons instruction? I'm trying to draw a very fine distinction here at the podium, and that's that, you know, under Simmons, I think counsel reasonably thought he was asking for a Simmons instruction, but Schaefer and Kelly make it clear that he didn't do that. Boy, that is slicing the bologna pretty thin. Yeah. I also find it odd because Schaefer was a case that rejected the Simmons claim. So I don't see how it can be part of the holding if the court rejects it. And it also appears that you're running into the teeth of your own brief, which says, by asking for life means life and a life means life instruction, counsel did in fact request a Simmons instruction. That's the statement in the brief. If you're walking away from it now, that's okay, but just say it. Yeah. I guess on further consideration, I would say maybe he didn't. Under Schaefer and Kelly, no, but he thought he was under Simmons. All right. But if he didn't, then under AEDPA, the Pennsylvania Supreme Court did not make a ruling that was contrary to clearly established law. Or a reasonable interpretation of the facts. I mean, the fact that you can interpret it one way when writing the brief in a different way now suggests its reading of the record at least was not unreasonable. I think Schaefer and Kelly make very clear that a defense request is not necessary. All right. But again, the reason I embarked on this line of questioning is that if there's something technical about a Simmons instruction, and I thought your answer as to what off the top of your head was quite cogent and clear, if that's what a Simmons instruction looks like, that this means life without parole, then it would seem awfully hard for us to conclude that when the trial judge here said, life is life, there will be no parole, that the Pennsylvania Supreme Court somehow erred under AEDPA's deferential standard in saying that was good enough. And I guess what I'm hearing, and correct me if I'm misunderstanding your argument, but your argument is sort of based on the premise that the well was so poisoned by the trial judge's initial error that nothing could have been said to cure it. Is that where we are in this case? We're not there. It's not that nothing could have been said. The judge could have said, you have to disregard what I just said, which is not true. What's true is that there's no parole available right now. And when he says, this is accurate, life means life, there won't be any parole, what's the meaningful distinction between saying, this is accurate, meaning what I'm about to say, life is life, there won't be any parole? What's meaningfully different between that language and the language you just used? The language I just used retracts the first statement. Yeah, it's all about the retraction. You're saying there needed to be an official retraction because the only way to unpoison the well wasn't through correct information later. The correct information later was helpful but not enough because there had to be a retraction. Except that then runs into the, I must have misspoken somewhere, which you're saying couldn't even reasonably have been read as a retraction. No, it couldn't. Okay, good. All right. Thank you very much, Mr. Malinowski. We'll have you back on rebuttal. Thank you. And we'll hear from counsel for the commonwealth. Good morning. May it please the court, my name is Heather Gallagher and I represent the commonwealth in this matter, District Attorney's Office of Lehigh County. My position would be that the decision by the Pennsylvania Supreme Court was not contrary to nor non-reasonable application of established federal law. They reviewed the facts. Why didn't you brief this as an ed-bedeference case? Pardon me? Your brief is all about harmless error. That's a good point because I think that, based on the certificate of appealability, whether the Pennsylvania Supreme Court unreasonably applied Simmons when it determined the court was not obligated to instruct the jury, also whether failure to give the Simmons instruction is harmless error. And we did focus on the harmless error aspect. Not conceding the other issue, obviously. So when you say not conceding, the rule is if you don't make the argument, you've conceded it, right? So it appears, since the only argument made in the briefing is harmless error, that you've conceded that dangerousness was put in issue by the prosecution. You've conceded that there was a request for a curative instruction by a defense counsel. You've conceded that there was Simmons error and that your last line is, yeah, but so what? It was harmless. Am I right that those first three points, Commonwealth doesn't take it up at all? I would agree that it appears that it's conceded, but we do not. We agree with the lower court opinion. I think it's mentioned in the statement of facts in the argument. I would agree that it's not in there. And, again, I'd be happy to file a letter post-submission addressing the matter. Well, the time to address the matter is before we all gather here to hear oral argument. That's why all the preparation goes into this before we get here. And I agree, and I believe that the district court's opinion, as well as its response to the request for a certificate of appealability and re-argument adequately and fully does address the opinion and provides this court with adequate basis. Well, here's something that's said in the opening brief. And you don't respond to this either, so I want to give you a chance to hear it. Sure. Counsel quotes Kelly as follows. In Schaefer, we explicitly noted defense counsel's statement to the jury that Schaefer would die in prison after spending his natural life there, as well as the trial judge's instruction that life in prison means until the death of the defendant. We found these statements inadequate to convey a clear understanding of Schaefer's parole and eligibility. And Kelly, no less than Schaefer, was entitled to an accurate jury instruction. Now, one might take issue with the Supreme Court of the United States I wonder why language like life in prison means until the death of the defendant is not enough to tell people he's never getting out until he's a cadaver. That seems pretty clear. But for some reason, a majority of the Supreme Court or plurality, a controlling number of justices said that's not good enough, which seems to indicate, as we've heard from Mr. Motelinski here this morning, that that corrective instruction under Simmons has to be crystal clear. It has to say there's no parole and eligibility, period. I don't understand personally why he's going to die in prison isn't the ironclad logical equivalent of there will be no parole. But the Supreme Court of the United States seems to think that's not enough. So why would it be enough here for the trial judge to say life is life? Because here the trial judge also says there won't be any parole. And I think the fact that it goes beyond just life is life, and it provides the specific explanation that the United States Supreme Court seems to think is required, that saying until their death is not, life, there won't be any parole, is sufficient. What's your argument in response to what we've heard here this morning that Kelly and Schaefer are emphasizing that you need to speak? Once you have muddied the waters the way this trial judge did, you're required to have an explicit retraction that says I was wrong, forget everything I just said. Well, Schaefer and Kelly do not say that that's required. I do believe that the judge said I'm mistaken clearly, and both the prosecutor and the defense attorney when they essentially jumped up and asked for a sidebar for the correction. Quite frankly, my position would be Simmons was not put into, was not implicated until that point that the judge's response to the question then put Simmons in play and required the corrective instruction which he gave because his initial answer. Well, Simmons was not fully in play, but future dangerousness was in play, right? I mean, when he gets out, that was argued at the sentencing hearing, yeah. There were certain comments absolutely by the prosecutor. I think most of the comments by the prosecutor, I would argue, were backward because one of the aggravators. If I'm not going to win that argument, I'll move on. No, go ahead, go ahead. I thought they were backward, too, the first time I read it, but then I remembered that it wasn't argued at the guilt phase. It was argued at the sentencing phase. So how can you educate us as to how it could be backward looking at the penalty phase? Well, one of the aggravators that the prosecution sought to prove was significant history of felonies by use of force. And so a lot of what the prosecutor talked about, especially on cross-examination, was the things that he had done. He constantly used terms in past tense. He referenced things that the defendant had done, crimes he had committed previously. And maybe if he'd only done that, he'd be okay, but he didn't only do that. And then defense counsel did not request the instruction. So it sounds like you don't have much of a toehold for saying dangerousness wasn't in question. When the prosecutor says things like an antisocial personality disorder is just somebody who goes out and commits crimes, and he's been doing this for an awful long time, he may be fine in his own household. But when he gets out, ladies and gentlemen, watch out, watch out. All you have is depravity and rape and murder and death. Those are forward looking in the penalty phase, clearly putting – are they not clearly putting future dangerousness – I mean, what do the words watch out when he gets out mean? I think the context, because if you looked at during cross-examination, some of the questions that were posed were the fact that he had been in treatment previously, and when he got out of treatment on repeated occasions, he committed crimes at that point in time. But there was also questions during – That just makes the case, doesn't it? No, because I think – Because what it's saying is he's had lots of treatment, and he still goes back and does this. When he gets out, quote, watch out. And one of the things that the – during the cross – I'm not sure if it was cross-examination or redirect, was the fact that while he is in and he's receiving treatment, the defense's own expert was if he's in prison for even 40 to 80 years, that he needs the treatment. He needs to be in. I would look at that cross-examination – I'm sorry, that closing argument, and as a whole, not just taking that one section of it, as I think we need to do, is we look at the entire record of those proceedings, and I think there's an argument to be made that it's backwards looking. I don't disagree that – But that argument was not made in your brief, right? No. Yeah. And then once the question was posed by the jury, the response by trial – I'm sorry, by the trial court, and then both prosecutor and defense counsel asked for it to be – to review it, to go to sidebar, and then the court gave a very – not confusing – a very specific instruction to the jury, life is life, there won't be any parole. Okay. So let's go back. I'm not inclined to flyspeck future dangerousness because the jury specifically brings this up. But there's this disagreement, and your friend on the other side says we shouldn't read the or the like to be something much broader than pardon or commutation here. And so the judge is busy speculating about possible legislative change. You know, I presume if the judge came out and said, well, you know, we might abolish prisons next year or there might be the heat death of the universe next year, I'm presuming you're not saying that that kind of speculation would be okay for a judge to engage in. Well, I would prefer that the judge not speculate at all and just give the instruction. But would there be certain speculation that would be more problematic than this? Absolutely. Okay. Because your friend makes a powerful point. There's a difference between pardon and commutation are existing paths versus there's some speculation involved in what might change in the future. So why is the possibility of change on the okay side of the speculation line if you're defending that? It's not that it's okay. It's that we have a curative instruction here that comes after that. Okay. And I think because we have the curative instruction and the judge corrected his statement and made a clear statement that instructing the jury what it must instruct the jury is why it's not a problem in this case. Why don't you answer, if you would, the point that Judge Bevis brought up earlier, and that was that the Supreme Court justices in Pennsylvania, when they looked at it, said, well, there's not an error here at all. And maybe that's defensible if you think that the defense counsel had some obligation to object after the curative instruction and failed to do so. Can you speak to the Wainwright versus Sykes point that was raised there? What was the obligation of defense counsel, if any, after that second instruction? If it was a good enough instruction, no need to rise, I guess. But if it was not, are we in cause and prejudice territory? In terms of Brecht and whether or whether or not the, I mean, it could all, well, it was a potential ineffective assistive counsel claim that's been litigated and is final. Right. But I think that at the Pennsylvania Supreme Court. It would be ineffective, right? Would it be ineffective? Well, then there's no prejudice. I think that that's part of the analysis. And under these circumstances, because we, under the facts here, certainly whether or not it was substantial and injurious to the defendant. You're back to harmless error. Well, if we're going to go to cause and prejudice, I think that we have to go to harmless, well, a version of harmless error under EDIPA. Yeah, you're saying there's no prejudice, even though the jury was clearly worried about this, worried enough to raise it after defense counsel's closing argument to say, is this guy ever going to get out? Like, you're saying there's no prejudice in failing to object. No, because we had a curative instruction. I think once we had, I think once we, it's hard to go back. If there had never been the question, is that what you're asking? No, I'm trying to get you to address what was discussed with Mr. Modelinsky. And that is, if that curative instruction was inadequate, as they vociferously argue in their briefing and here at the podium today, then that meant, did it not, that defense counsel was obligated to get up and give an objection, right? Yes. Okay. But if he was obligated to do that and didn't do that, then why isn't that, why doesn't that satisfy the cause piece of Wainwright v. Sykes? Because it's ineffective assistance not to do it. There's cause. And why isn't it satisfying prejudice? Because having failed to do it, the jury, with a huge question about future dangerousness clearly weighing on its mind, is left with that question hanging on its mind. And to that point, I would argue the prejudice, we're looking at a, we look at the entire record. We have three aggravators that were being presented. I think Judge Jordan has asked you to focus on the cause piece of it. You're not conceding that it's such an obvious error that it was only ineffective? No. I thought that you were asking me to concede that there. I'm sorry. I'm asking you to tackle both pieces of Wainwright v. Sykes, cause and prejudice. I don't, again, my argument would be that it's reasonable to conclude that defense counsel did not have a basis to object to the lack of an instruction at that point in time. And it's hard for me to imagine not having this instruction. I think it would be extraordinarily problematic if we didn't have this instruction and you were left with what the judge had said, because clearly what the judge had said was incorrect I'm not sure you should concede that either. I'm not conceding that it was incorrect. I'm conceding that part where he says before, you know, that the law could change. It's problematic. I think it's a closer call. You know, if we get, if I'm conceding future dangerousness, which I'm not, I'm not saying that a Simmons instruction, but from the beginning I said that I'm not conceding the future dangerousness. What case, I'm surprised that you're conceding that it was problematic to say the law could change. Isn't there a Supreme Court case law that says truthful information is okay? Absolutely, and there's also Pennsylvania Supreme Court case law that says that, including Pennsylvania v. Clark, which this court, in fact, did rely upon for saying that it's okay. That part of it is okay. What I think is, the part that I have a problem with is, you know, is you're giving truthful information. That's what the law is now, and so forth. But without clarification, I think that there's an argument to be made. It's kind of confusing as to what the jury is supposed to do. Because it's suggesting to the jury that there might be a substantial likelihood of the law changing and parole being abolished. Yeah. I wouldn't personally be comfortable with that. Would it be, you know, are there a lot of avenues to argue? One, yeah, I think that, again, going back to the future dangerousness, going back to the fact that counsel didn't object. But, of course, as soon as once the judge says that, everybody jumped up and said, we want clarification, we want. And then the instruction that the judge gave after that, everyone was fine with, because it gave an accurate representation of the law and was very clear, concise, not confusing at all. Okay. All right. Thanks very much, Ms. Gallagher. Absolutely. I appreciate your argument, Ms. Molenski. We'll have you back for your rebuttal. Thank you. I just want to point out, first, Kelly says that evidence of future dangerousness under Simmons is evidence with a tendency to prove dangerousness in the future. Its relevance to that point doesn't disappear merely because it might support other inferences or be described in other ways. And I read that to point out that even though some of the evidence and argument could be backward-looking, that doesn't mean it isn't also forward-looking, and so evokes future dangerousness. Again, the argument, the jury charge needs to be read as a whole, and the judge did not retract his first statement. So the charge as a whole was that the law could change in the future. Well, wait. When you say as a whole, that just reads out everything else. I'm struggling with that a little bit. When you say the charge as a whole says the law could change, the judge said, I may have misspoken. I misspoke. And then says what we've repeated here like several times. How is it that the charge as a whole doesn't include that? It includes the fact that he said, I may have misspoken, but he never retracts the statement, and that's the key here for why this couldn't have been harmless. There had to be words to the effect of, don't listen to what I said a minute ago. So, yes. Kelly is important to your argument here. Footnote three in Kelly ends by stressing that the state was not, even if it's free to argue future dangers, the state was not free to mislead the jury by concealing accurate information about the defendant's parole eligibility. So Kelly could be read narrowly as a case about don't conceal accurate information, not don't give more information than is needed and speculate about things that could come to pass. This is at page 254, note three. End of the footnote. I'm sorry, could you repeat your question? Kelly is central to your argument. Right. That footnote suggests that the central problem is misleading the jury by concealing accurate information about the defendant's parole and eligibility. The problem here is a different one. No one concealed accurate information about parole eligibility. It was rather supplying too much information that might lead to speculation about possibilities that are contingent or speculative. Different problem, thus maybe not clearly established by Kelly. I guess I would just say I wouldn't read that footnote as narrowly as you are, and I would point back to Simmons where Justice O'Connor said the jury can be told about truthful information, about commutation, pardon, and the like, and a change in law in the future is not like commutation and pardon, which are presently available. At the oral argument in Simmons, Schaefer, and Kelly, this idea was brought up by the justices about, well, can we tell the jury that the law can change? And that never made it into any one of their opinions. It was those questions were asked kind of next to questions about commutation and pardon, and the fact that that didn't make it into any of the opinions shows that that is not like commutation and pardon. On the contrary, I think you could read it the other way. The fact that they're tossing around all three arguments suggests it wasn't clearly established. I don't think that's true because commutation, pardon, and the like, change in the law in the future is not like things that do exist. Things that don't exist are not like things that do. Okay. Anything else? All right, thank you, Mr. Modolinski. Thank you, Ms. Gallagher. It's an important case, well-argued. Appreciate counsel's time. We've got the matter under advisement. We'll ask for a transcript to be prepared, okay? And Commonwealth can bear the cost on that. All right, thanks. We're in recess. Thank you, Your Honor.